TORBERT, Chief Justice
(dissenting):
I respectfully dissent. I believe that the trial court erred in disregarding the value of the property as established in the condemnation proceeding.
The function of a condemnation proceeding is to determine the total compensation required to be paid for the property taken. City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237 (1959). The compensation is to be equivalent to the full value of the property which is commonly expressed as its “fair market value.” 4 Nichols, The Law of Eminent Domain § 12.1 (3d ed. 1977). Where there are different interests in the property, all parties are, of course, entitled to compensation; however, the proper procedure is to ascertain the total compensation, or, value of the property, as if the property belonged to one person and then allocate this value among the respective parties in interest. City of Dothan v. Wilkes, supra. Therefore, once the value of the property has been established, all that remains is to apportion the award to the interested parties.
In the present case, the value of the property was fixed in a consent condemnation award where all parties in interest were represented. After entering the order for the condemnation award, the trial court expressly retained jurisdiction of the case for the sole purpose of allocating the award between the various parties in interest.
The majority says that the parties are not “bound to determine the fair value of the lessee’s interest by a fixed percentage of this amount,” that is, the fair market value of the property. However, experts for both the lessors and lessee testified that commercial property should yield 10 per cent of its market value as its annual rental or economic rent. Lessors’ expert, Mr. Haynes, testified as follows:
Q. All right. So, if I had a $400,000.00 piece of property and I went to you and I said, “Mr. Haynes, I want you to handle this for me and I want you to get as much as you can in handling it,” you would do a decent job for me and try to get me ten or eleven percent of that $400,000.00 on an annual basis?
A. That’s correct, or otherwise I wouldn’t take the listing.
Q. So, that if you assume that this property — I mean, forget about your predisposition about the value, but if you assumed that this property is worth $400,000.00, let’s just assume that it is fixed and X’d and stoned and is worth $400,000.00 and everybody agrees, everybody in the market place, everybody in the whole wide world agrees that it is worth $400,000.00, you would expect that property if you were handling it to be able to fix a lease on it from $40,000.00 to $44,000.00 a year, wouldn’t you?
A. If it had a $400,000.00 value.
Q. If it had a $400,000.00 value?
A. That’s right.
Mr. McGehee, another expert for lessors, testified similarly:
Q. What do you — if you are going to list some property for me, what kind of yield would you expect on a rental basis?
A. I would say today more people are trying to — more investors are trying to get a safer — safer tenant, safer *297 income stream, and maybe coming down from — there was a period three or four years ago that people talked in the 12 to 15 percent return range, and I would say now they are — the last few years they have been more in the 9, 10 and 11 percent return range, if their — if they have a good sound lease and substantial tenant.
Q. So, you would expect commercial property back in ’75 — -in 76 in the Birmingham area to yield approximately, in terms of annual rent, 10 percent of its value?
A. I would say that would be a good figure to hand your hat on.
The trial court, in its final decree, determined that the economic rent or the fair rental value was $20,000. By so computing this fair rental value or economic rent, it necessarily follows that the fair market value of the property was $200,000, not $400,-000 as fixed by the condemnation award.
Lessors maintained that the fair market value of the property condemned was in fact worth only $200,000, not $400,000.
Accordingly, the trial court disregarded the amount of the condemnation award as to the fair market value of the property condemned. I would hold, that absent fraud or collusion, the award fixed in a condemnation proceeding is determinative as to the fair market value of the property taken and should be utilized to apportion the' award between the various parties in interest, i. e., between the lessor and the lessee.
It is my opinion that the majority erred when it stated:
It is true, as Shell points out, that the trial court, in arriving at the fair market value of the unexpired portion of the lease, accepted Shell’s argument that this amount could be determined by calculating 10% of the total value of the property, but rejected its contention that the fair market value of the property for this purpose was the amount of its condemnation award. The trial court arrived at the $20,000 per annum figure by taking 10% of $200,000, not $400,000. . . .
We agree with Shell that where all of the parties agree to the condemnation award as they did here, they are bound to accept that figure as the value of the property in determining the value of the unexpired lease term. They are not, however, bound to determine the fair value of the lessee’s interest by a fixed percentage of this amount.
But it was the lessors’ own witnesses who testified that the fair rate of return was about 10 per cent of the value of property at this time in Birmingham.
Accordingly, I would reverse and remand this case to the trial court for an appropriate decree apportioning the award between the lessors and the lessee consistent with this opinion.